UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY PETTY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | No. 4:24-CV-1677-CMS |
| | ) | |
| FRANK BISIGNANO,[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORDANDUM AND ORDER

Plaintiff Larry Petty brings this action appealing the Social Security

Commissioner's final decision denying his application for Disability Insurance Benefits

and Supplemental Security Income. (Doc. 1). Because the final decision is supported by

substantial evidence, the Court AFFIRMS the denial of benefits.

### BACKGROUND

*Factual Background*

Plaintiff Petty alleged he was disabled and unable to work due to hypertension,

osteoarthritis in both hands and feet, and degenerative disc disease (Doc. 9 at 1). Plaintiff

alleges disability since October 15, 2021. (Doc. 9 at 1).

*Five-Step Analysis Used by the Social Security Commission*

---

[1] Frank Bisignano became the Social Security Commissioner in 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Bisignano is substituted for his predecessor, acting Commissioner Leland Dudek. *See also* 42 U.S.C. § 405(g) (noting that suits brought under this section "shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

1

When reviewing a claim under 42 U.S.C. § 405(g), the Commission applies a five-step sequential test. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Teabeau v. Kijakazi*, No. 4:21-CV-703-NCC, 2022 WL 4598672, at *2 (E.D. Mo. Sept. 30, 2022) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)). "The claimant has the burden of proof to show she is disabled through step four," with the burden of production shifting to the Commissioner at Step Five. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "The ultimate burden of persuasion to prove disability, however, always remains with the claimant." *Young v. Apfel*, 221 F.3d 1065,1069 n.5 (8th Cir. 2000).

The first step is an evaluation of whether the claimant is engaging in work activity and whether any such work constitutes "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* Second, the Commissioner must examine the evidence to determine whether the claimant has a severe "impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citing 20 C.F.R. § 416.920(c)). Third, the Commissioner evaluates the severity of the impairment, and if the impairment crosses a threshold listed in the regulations, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii), (d).

Fourth, if the impairment is found to be severe but does not meet the threshold required for a presumptive finding of disability in Step Three, the Commissioner assesses the claimant's "residual functional capacity" (RFC) to perform sustained work based on the evidence in the record. Sections 416.920(e), 416.945; *see also* SSR 96-8p, 1996 WL

2

374184 (July 2, 1996) (stating the SSA's policy interpretations regarding the RFC assessment). Following the determination of the claimant's RFC, the Commissioner assesses whether the claimant can perform the requirements of his past relevant work. 20 C.F.R. § 416.920(f). If so, the claimant is not disabled. *Id.*

Finally, at Step Five, the Commissioner determines whether the claimant can make adjustments to other work, given the claimant's residual functional capacity, age, education, and work experience. Section 416.920(a)(4)(v). If the claimant can make adjustments to other work, he is not disabled. *Id.* Further, if a claimant reaches Step Five, the Social Security Administration must meet a limited burden of providing evidence "that other work exists in significant numbers in the national economy that [claimant] can do." Section 416.960(c)(2).

*Procedural History*

Plaintiff filed applications for Disability Insurance Benefits in March 2022. (Doc. 9 at 1, Doc. 8 at 14, 167).[2] He alleged a disability onset date of October 15, 2021, and the same conditions causing disability as in the current case. (Doc. 9 at 1). Plaintiff received an unfavorable decision from the Administrative Law Judge (ALJ) on July 21, 2022, and upon reconsideration on December 6, 2022. (Doc. 9 at 1; Doc. 8 at 14, 72,76, 78-82). Plaintiff then filed a written request for a hearing pursuant to 20 CFR § 404.929. (Doc. 8

---

[2] Due to the volume of attachments to the Transcript (Doc. 8) and the fact that the Transcript's division into exhibits does not follow a clear order, the Court will refer to these documents by their exhibit and page number as designated in the docket for the present case.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2025. (Doc. 8 at 16). On Step One, the ALJ found that the Plaintiff had "not engaged in substantial gainful activity since October 15, 2021, but noted that Plaintiff "reported having worked as a dishwasher." (Doc. 8 at 16). The ALJ declined to evaluate this work and earnings because there was "another valid reason to deny the claim." (Doc. 8 at 16).

In Step Two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, major depressive disorder and alcohol use disorder. (Doc. 8 at 17). The ALJ recognized that Plaintiff had been diagnosed with osteoarthritis at a consultative examination but found that the record did not establish that "osteoarthritis imposed more than minimal limitation in his ability to perform work-related activities and is not a severe impairment." (Doc. 8 at 17).

In Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Doc. 8 at 17). Because Plaintiff and his medical representative have never asserted that Plaintiff's impairments would satisfy Step Three, the Court does not address this portion of the ALJ's decision further. (Doc. 8 at 17).

In evaluating Step Four, the ALJ found that Plaintiff had the RFC to perform medium work. (Doc. 8 at 19). As relevant to Plaintiff's current claim, the ALJ summarized Plaintiff's testimony of his limitations due to his degenerative disc disease of the lumbar spine. (Doc. 8 at 19). At the hearing, Plaintiff testified that he takes over-the-

counter pain medication and meloxicam for back pain. (Doc. 8 at 19).  According to Plaintiff, the pain "radiates into his legs" and his legs sometimes "go out" when he walks. (Doc. 8 at 19). Plaintiff also reported walking with a cane "at times." (Doc. 8 at 19).

The ALJ found that Plaintiff's testimony regarding the "intensity, persistence, and limiting effects of [his] symptoms [was] not entirely consistent with the medical evidence and other evidence in the record." (Doc. 8 at 19). The ALJ noted that "[i]maging of the claimant's lumbar spine… demonstrated scoliosis and degenerative changes at L4-5 and L5-S1. (Doc. 8 at 20). The ALJ found that Plaintiff had a history of treatment for back pain and takes prescribed medication. (Doc. 8 at 20). At a 2023 examination, Plaintiff reported "experiencing low back pain that worsened after walking and was sometimes relieved with meloxicam and rest." (Doc. 8 at 20). And the ALJ credited the evidence from this examination that Plaintiff did have "some abnormalities on physical examination, including decreased range of motion in the lumbar spine, a wide-based gait, and the use of a cane." (Doc. 8 at 20). Even then, the ALJ found that Plaintiff had "normal muscle tone, normal strength, no muscle wasting or atrophy, and intact sensation." (Doc. 8 at 20). Therefore, the ALJ found that the use of a cane was "inconsistent with these objective findings" and would not be included in the RFC. (Doc. 8 at 20). Additionally, the ALJ concluded that Plaintiff "would be unable to lift more than required by medium work and would have additional postural limitations, as outlined in the" RFC (Doc. 8 at 20).

At Step Five, the ALJ found that Plaintiff could perform past relevant work as an industrial cleaner and salvage laborer. (Doc. 8 at 22). Because Plaintiff's claim does not relate to Step Five, the Court will not address the ALJ's findings further.

Plaintiff appealed the ALJ's adverse decision to the Appeals Council, which denied review. (Doc. 8 at 1-3). Plaintiff sued to challenge the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1).

Beyond this summary, this Court incorporates by reference the facts from Plaintiff's Statement of Uncontroverted Material Facts, (Doc. 10), and Commissioner Bisignano's Response, (Doc. 13), along with the filed record (Doc. 8). The Court will reference specific facts as needed below.

## LEGAL STANDARD

The Court will affirm the decision of an ALJ "'if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole.'" *Kraus v. Sual*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)). In other words, the factual findings of the Commissioner are conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405; *see also Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The United States Supreme Court identifies "substantial evidence" as a term of art and directs a court using that standard to identify whether there is "sufficient evidence" in the existing administrative record "to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019).

6

The standard for substantial evidence is not high. *Id.* at 103. "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Supreme Court further defines "more than a mere scintilla" as meaning only that there must be "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consol. Edison Co.*, 305 U.S. at 229).

Alleged legal error by the ALJ is reviewed *de novo*. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). "'Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law.'" *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Collins*, 648 F.3d at 871).

Furthermore, while the Court "must consider evidence in the record that fairly detracts from, as well as supports" the agency decision, the Court will not reverse an agency decision "merely because [it] find[s] that substantial evidence exists in the record that would have supported a contrary outcome." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (internal quotations omitted). Instead, the Court "will disturb the [ALJ's] decision only if it falls outside the available zone of choice." *Bonham v. Bisignano*, 177 F.4th 934, 940 (8th Cir. 2026) (quotation omitted) (alteration in original).

## ANALYSIS

Here, Plaintiff filed a Complaint (Doc. 1) and a Social Security Brief (Doc. 9) challenging the determination of the ALJ. Plaintiff appeals the decision of the ALJ, alleging that the ALJ failed to properly evaluate the opinion of Dr. Melvin Butler, who examined Plaintiff in October 2023. Plaintiff's challenge to the ALJ's finding breaks

7

down into two categories, alleging that: (1) the ALJ failed to adequately address the "supportability" and "consistency" of Dr. Butler's evaluation; and (2) the ALJ improperly drew his own inferences from the record before him. Neither argument has merit.

**I.      The ALJ adequately explained why he found Dr. Butler's opinion unpersuasive**.

For claims filed on or after March 27, 2017, an ALJ must evaluate medical opinions and prior administrative medical findings pursuant to 20 C.F.R. § 404.1520c. These rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Further, 20 C.F.R. § 404.1520c(c) requires an ALJ to consider the following factors when evaluating a medical opinion: supportability, consistency, the relationship to the claimant, the specialization of the physician, and "other factors." Supportability and consistency are the most important factors. 20 C.F.R. § 404.1520b(2).

The Court starts with supportability. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "In articulating how he considered the supportability factor, an ALJ may properly consider that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not

consider certain evidence, or that the physician did or did not provide a detailed explanation for the opinion." *Scheer v. Bisignano*, 2026 WL 904564 at *3 (E.D. Mo. Mar. 31, 2026) (citing *Starman v. Kijakazi*, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021)).

Consistency looks at how the physician's opinion comports with the other medical evidence in the case: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. 404.1520c(c)(2).

"The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Svendsen v. Kijakazi*, 2022 WL 2753163, at *8 (D.S.D. July 14, 2022) (citing *Goss v. Kijakazi*, 2022 WL 1511521, at *3 (E.D. Ark. May 12, 2022)).

Plaintiff's argument hinges on a single paragraph of the ALJ's decision. That paragraph is fully set out below:

> Melvin Butler, MD, performed the October 2023 consultative examination and opined that the claimant could: lift up to fifty pounds occasionally and twenty pounds frequently; could stand two hours total in an 8-hour workday; could walk for one hour, but would need a cane; could frequently reach, handle, finger, and feel; could occasionally use foot controls on the right; could occasionally balance and climb ramps and stairs but could never stoop, kneel, crouch, crawl, or climb ladders, ropes, and scaffolds; could occasionally be around moving mechanical parts and operate motor vehicles; and never be around unprotected heights, humidity, dusts, fumes, gases, extreme cold, extreme heat, or vibration (Exhibit 2F). These limitations are largely unsupported by the associated narrative report and objective findings. As discussed above, the claimant was noted to have some diminished range of motion in the lumbar spine and demonstrated a

wide based gait, but there was no indicated loss of strength or sensation in the lower extremities that would support the medical need for a cane to walk more than ten feet or an inability to stand more than two hours total. Additionally, the abnormalities noted are not indicative of an inability to perform the postural activities listed and the record does not establish any impairments that would be affected by the claimant's exposure to environmental conditions as listed. Thus, this opinion is also not consistent with the record in its entirety. Accordingly, it is generally unpersuasive.

(Doc. 8 at 21).

This paragraph adequately addresses both supportability and consistency. As to supportability, the ALJ found that Dr. Butler's conclusions that Plaintiff would need a cane to walk more than ten feet and could not stand for more than two hours were inconsistent with Dr. Butler's report itself. In his report, Dr. Butler "did not observe any muscle wasting or muscle atrophy in any of Plaintiff's extremities." (Doc. 8 at 269). Similarly, Dr. Butler wrote that "[s]ensory was 5/5 in the lower extremities." (Doc. 8 at 269). While brief, the ALJ referenced specific internal contradictions in Dr. Butler's report. *See Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021) ("The ALJ'S brevity is not reversible error."). That is enough to find that the ALJ addressed supportability.

On a similar note, the ALJ also adequately explained why he found Dr. Butler's report inconsistent with other evidence in the record. Dr. Butler found that Plaintiff could "never be around unprotected heights, humidity, dusts, fumes, gases, extreme cold, extreme heat, or vibration." (Doc. 8 at 21). As the ALJ noted, there is no evidence in the record of how scoliosis and degenerative disc disease would require these environmental limitations. (Doc. 8 at 21). Plaintiff now attempts to argue that these limitations derive from the sedative effects of Meloxicam. (Doc. 8 at 237). But it is unclear how a sedative

10

medication would require a claimant to completely avoid extreme cold and extreme heat – two findings that Dr. Butler made without any explanation. (Doc. 8 at 277); *see also* (Doc. 8 at 268) ("Denies excessive thirst or heat or cold intolerance").

Nor did the ALJ's opinion engage in impermissible "cherry-picking." (Doc. 9 at 7) (quoting *Martha H. v. Kijakazi*, 2023 WL 3122200 at *10 (D. Neb. Apr. 27, 2023) ("An ALJ engages in cherry-picking when he focuses on 'facts that support a finding of nondisability while ignoring evidence that points to a disability finding, which violates the ALJ's duty to consider all relevant medical evidence in making a determination.") (quotations omitted)). An ALJ is not required to "explicitly reconcile every conflicting shred of medical evidence." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (citation modified). And an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010).

Regardless, the ALJ referenced the data points that could have supported Dr. Butler's recommendations in evaluating the persuasiveness of Dr. Butler's opinions. (Doc. 8 at 21) ("[T]he claimant was noted to have some diminished range of motion in the lumbar spine and demonstrated a wide based gait."). But consistent with his fact-finding function, the ALJ weighed the evidence and ultimately found Dr. Butler unpersuasive. *See Bonham v. Bisignano*, 177 F.4th 934, 945 (8th Cir. 2026) (a reviewing court "will not disturb an ALJ's decision merely because there is evidence supporting two inconsistent conclusions.") (quotation omitted) .

In short, the ALJ adequately explained why he found Dr. Butler's opinion unpersuasive on the bases of supportability and consistency. The ALJ's conclusion that

these opinions lacked supportability and consistency thus was not erroneous under 20 C.F.R. § 404.1520c.

## II.     The ALJ did not improperly draw inferences from the record.

Plaintiff also argues that the ALJ "impermissibly played doctor by interjecting his own interpretation" of Plaintiff's imaging studies and Dr. Butler's opinion in formulating Plaintiff's RFC. (Doc. 9 at 9). As laid out above, the ALJ referenced Plaintiff's imaging studies, Plaintiff's treatment history, and Dr. Butler's physical examination findings in formulating the RFC.

"'[T]here is no requirement that an RFC finding be supported by a specific medical opinion.'" *See Bonham*, 177 F.4th at 940-41 (quoting *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016)). "An ALJ need not 'obtain from medical professionals a functional description that wholly connects the dots.'" *Id.* at 945. (quoting *Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020)). In fact, the Eighth Circuit has upheld an RFC determination in the absence of a "direct, 'functional' medical opinion" where the medical record was adequately developed. *Id.* at 940-41 (citing *Hensley*, 829 F.3d at 930-32)).

First, the ALJ did not "interpret" Plaintiff's imaging studies. The ALJ merely summarized the findings of Dr. O'Brien, the doctor who evaluated Plaintiff's imaging studies. (Doc. 8 at 265). *See Hurst v. Kijakazi*, 2021 WL 3021424, at *7 (E.D. Mo. Jul. 16, 2021) ("Plaintiff mischaracterizes what the ALJ did. The ALJ did not interpret the MRI results. She quoted from the impressions of the physician who interpreted the images.") (emphasis removed).

12

As required by law, the ALJ relied on the "record on the whole" in determining Plaintiff's RFC. *Kraus*, 988 F.3d at 1024 (quoting *Blackburn*, 761 F.3d at 858). The ALJ based his findings on medical testing performed and specifically cited Plaintiff's normal muscle tone, normal strength, lack of muscle atrophy, and intact sensation. (Doc. 8 at 20). Even though the ALJ found Dr. Butler's opinion "generally unpersuasive," the ALJ could still credit some of Dr. Butler's findings. *See Austin*, 52 F.4th at 729 ("the ALJ is free to accept some, but not all, of a medical opinion.").

In short, the Court finds that the ALJ properly evaluated Plaintiff's degenerative disc disease, and the decision was supported by substantial evidence in the record.

## CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's decision is **AFFIRMED.** The Court enters a separate Judgment concurrently with this memorandum and order.

Dated this 23rd day of July 2026.

_____
CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE